UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**LAURA ANNE ALLEN**,                                    Case No. 6:15-cv-00998-KI

                    Plaintiff,                          OPINION AND ORDER

        v.

**CAROLYN COLVIN, Acting**
**Commissioner of Social Security**,

                    Defendant.



        Merrill Schneider
        Schneider Kerr Law Offices
        P.O. Box 14490
        Portland, OR 97293

                Attorney for Plaintiff

        Billy J. Williams
        United States Attorney
        District of Oregon

Page 1 - OPINION AND ORDER

Janice E. Hebert
Assistant United States Attorney
1000 SW Third Ave., Ste. 600
Portland, OR 97204-2902

Kathryn A. Miller
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Ste. 2900 M/S 221A
Seattle, WA 98104-7075

       Attorneys for Defendant

KING, Judge:

Plaintiff Laura Allen brings this action pursuant to section 205(g) of the Social Security

Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying plaintiff's applications for disability insurance benefits ("DIB") and

supplemental security income benefits ("SSI"). I reverse the decision of the Commissioner and

remand for further proceedings.

## BACKGROUND

Allen protectively filed an application for DIB on August 8, 2011 and for SSI on March

21, 2012, alleging disability beginning February 8, 2011. The applications were denied initially

and upon reconsideration. After a timely request for a hearing, Allen, represented by counsel,

appeared and testified before an Administrative Law Judge ("ALJ") on July 25, 2014.

On September 24, 2014, the ALJ issued a decision finding Allen not disabled within the

meaning of the Act and therefore not entitled to benefits. This decision became the final decision

of the Commissioner when the Appeals Council declined to review the decision of the ALJ on

September 24, 2014.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits

to people who have contributed to the Social Security program and who suffer from a physical or

mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security

income benefits may be available to individuals who are age 65 or over, blind, or disabled, but

who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to

cause death or to last for a continuous period of at least twelve months. 42 U.S.C.

§§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his

physical or mental impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and

1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for

determining if a person is eligible for either DIB or SSI due to disability. The evaluation is

carried out by the ALJ. The claimant has the burden of proof on the first four steps. *Parra v.

Astrue*, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ

determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R.

§§ 404.1520(b) and 416.920(b).  If the claimant is engaged in such activity, disability benefits are

denied.  Otherwise, the ALJ proceeds to step two and determines whether the claimant has a

medically severe impairment or combination of impairments.  A severe impairment is one

"which significantly limits [the claimant's] physical or mental ability to do basic work

activities[.]"  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not have a severe

impairment or combination of impairments, disability benefits are denied.

      If the impairment is severe, the ALJ proceeds to the third step to determine whether the

impairment is equivalent to one of a number of listed impairments that the Commissioner

acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d)

and 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is

conclusively presumed to be disabled.  If the impairment is not one that is presumed to be

disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the

claimant from performing work which the claimant performed in the past.  If the claimant is able

to perform work she performed in the past, a finding of "not disabled" is made and disability

benefits are denied.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

      If the claimant is unable to perform work performed in the past, the ALJ proceeds to the

fifth and final step to determine if the claimant can perform other work in the national economy

in light of his age, education, and work experience.  The burden shifts to the Commissioner to

show what gainful work activities are within the claimant's capabilities.  *Parra*, 481 F.3d at 746.

The claimant is entitled to disability benefits only if he is not able to perform other work.  20

C.F.R. §§ 404.1520(g) and 416.920(g).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance. *Id.* (internal quotation omitted). The court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations. *Id.*

## THE ALJ'S DECISION

The ALJ identified Allen as insured through June 30, 2015, and found she had not engaged in any substantial gainful activity since February 8, 2011. Allen's severe impairments of obesity and a status post right arm injury did not meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. Instead, the ALJ determined Allen retained the ability to perform light work, except she could not climb ladders, ropes or scaffolds, she could only occasionally crawl, she could only occasionally reach overhead with the dominant right upper extremity, and she could not work around hazards, such as unprotected heights and dangerous machinery. Additionally, the ALJ concluded Allen could perform frequent, but not constant, fingering and handling with the right upper extremity.

Given this residual functional capacity ("RFC"), the ALJ found Allen capable of performing her past relevant work as a receptionist and bowling desk clerk.

## FACTS

Allen has a high school degree and was almost 33 years old on her February 2011 alleged onset date of disability.

Two years before her alleged onset date of disability, Allen filed a workers' compensation claim for an injured elbow while working at Walmart. She was diagnosed with a sprained elbow/forearm and medial epicondylitis in April 2009. By May 2009, Allen reported not feeling any pain, except when lifting ten pounds. She felt physical therapy had been helpful.

Monique Stanfield, Psy.D. conducted a mental status examination in September 2010. Allen told Dr. Stanfield she could not work due to her "golfer's elbow," bipolar disorder, and depression. Tr. 348. She received outpatient therapy and took medications for her bipolar disorder. Dr. Stanfield found her capable of performing simple, detailed, and some complex tasks, and felt she could function adequately in social situations and with the public. The doctor thought Allen's prognosis was fair and that she could maintain employment if given special consideration for her physical limitations.

Richard Gasparre, M.D., examined Allen in December 2011, with particular reference to Allen's right elbow and left thumb pain. Upon testing, her right elbow was tender; she could perform the range of motion and strength tests but reported feeling pain. Similarly, her left thumb was non-tender, but she reported slight pain upon performing some of the range of motion tests. Dr. Gasparre thought Allen could occasionally lift 20 pounds and frequently lift ten pounds. He thought she could stand, walk and sit six hours in an eight-hour workday, alternating sitting and standing. She could frequently balance, stoop, bend, kneel, crouch, squat and crawl.

She had no environmental restrictions.  Importantly, Dr. Gasparre commented on Allen's ability

to reach, finger, and handle objects as follows:

| | | |
|---|---|---|
| Reaching | YES | PAIN IN RIGHT ELBOW/FOREARM LIMITS REACHING ON RIGHT TO OCCASIONAL |
| Fingering | YES | PAIN RIGHT FOREARM WITH REPETITIVE FINGER - OCCASIONAL |
| Handling Objects | YES | "                                                    " |

Tr. 374.

In September 2012, Allen sought care from Valerie Leitko, PA-C, for her right arm pain.

Allen reported that she had injured her arm in 2009, that her workers' compensation case had

closed in 2010, and that she was "not trying to get case reopened but is trying to get SSI

disability." Tr. 406.  She reported nearly constant symptoms, which increased with lifting and

stretching.  It took her three days to clean her house, and she had a hard time caring for herself

and cooking.  She remembered Percocet helped, but Vicodin did not.  Upon examination, Allen's

elbow was tender and she displayed grossly intact range of motion with a 4/5 muscle/grip

strength.  Leitko prescribed Percocet.

At her November 2012 appointment, Allen reported that the Percocet helped, but wore

off after two hours.  She felt increased function.  At her December 2012 appointment, Allen did

not need a refill of her pain medications and she displayed increased function.  She was obese at

228 pounds and a BMI of 38.02.

In April 2014, Allen obtained care from Mary Gibson, NP, who observed normal range of

motion, but tenderness on the elbow.  Allen had trouble fully extending her arm, but her grip was

strong on both sides.  Gibson prescribed Norco.  An MRI showed no acute abnormalities, and probable small vascular malformation within the medial soft tissues.

At a June 2014 orthopedic appointment, Allen reported continuous and worsening pain. She said she had tried physical therapy, without benefit.  She reported over-the-counter pain medications did not help, and she smoked marijuana daily for pain.  Examination revealed near full range of motion, slight pain at the extremes, tenderness over the bicep and elbow, and full sensation.  Finding nothing mechanically wrong, the orthopedist suggested Allen see a neurologist.

**DISCUSSION**

I.    <u>Medical Evidence</u>

The ALJ botched her evaluation of the medical evidence.  First, she misreported Dr. Gasparre's findings by indicating that he "found the claimant limited to occasional reaching, and non-specific limitations in fingering and handling objects."  Tr. 21.  Instead, referring to the remarks I quoted above, a more fair and complete reading of the record reveals Dr. Gasparre limited Allen to occasional reaching and to occasional repetitive fingering and handling of objects.

Second, although the ALJ gave the impression of addressing these limitations, she actually failed to do so.  Specifically, the ALJ gave Dr. Gasparre's opinion some weight, but found "further limitations in reaching" were necessary to address Allen's pain complaints since 2011, as well as Allen's obesity, "the combination of which would reasonably cause limits with climbing, overhead reaching, and around hazards."  Tr. 21.  In implementing her reasoning, the ALJ properly excluded jobs requiring climbing ladders, ropes or scaffolds, and hazardous work.

Page 8 - OPINION AND ORDER

However, inexplicably, the ALJ imposed a *less restrictive* functional limitation on Allen by limiting her to occasional *overhead* reaching with the dominant right upper extremity, rather than, as Dr. Gasparre directed, limiting *all* of Allen's reaching to occasional.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. *Id.* (treating physician); *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 632; *Widmark*, 454 F.3d at 1066. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. *Widmark*, 454 F.3d at 1066 n.2.

Since Dr. Gasparre's limitation to occasional reaching (as opposed to just overhead reaching) and the fingering/handling limitations are contradicted by non-examining agency consultant Rene Pena, M.D., the ALJ was required to give specific and legitimate reasons for giving Dr. Gasparre's opinion the weight she chose. Here, the ALJ misreported Dr. Gasparre's opinion, and failed to implement her intention to impose "further limitations in reaching." Tr. 21. As a result, the ALJ's analysis is flawed. Further, the error is not harmless as both of the jobs the ALJ relied on to find Allen capable of performing her past work require frequent

Page 9 - OPINION AND ORDER

reaching.  Selected Characteristics of Occupations Defined in the Revised Dictionary of

Occupational Titles, available at htps://www.nosscr.org/sco/sco-ocr.pdf, pages 336, 366 (1993).

As a result, the ALJ must either implement her stated finding–by limiting Allen more than Dr.

Gasparre found was necessary–or by giving reasons for finding Allen is not limited in the ways

Dr. Gasparre opined.

II.    Past Relevant Work

Allen argues the ALJ improperly relied on a composite job in finding Allen capable of

performing her past relevant work.  I do not address the argument since I am reversing and

remanding for the ALJ to address her error in analyzing Dr. Gasparre's opinion; the ALJ's

decision with respect to Dr. Gasparre's opinion may moot this issue.

III.    Credibility

Allen testified that she spent her days doing light housekeeping work; she paced herself.

She did not clean floors.  She showered, then brushed her hair if it did not hurt to do so.  She

could no longer make bread from scratch or stir macaroni.  She read, but it took her three or four

days to read a book because she could not sit and hold the book.  She no longer cross stitched,

bowled, or drove.  She took Aleve and Motrin for her pain.  She no longer took  prescribed pain

medication because she did not find it to be helpful.

The ALJ rejected Allen's testimony, pointing out the gap in medical care from December

2012 to April 2014, although there were references to two appointments in 2013.  The ALJ also

noted that at an emergency room visit in October 2012, Allen did not report any symptoms from

her right elbow.  The MRI showing no abnormalities was inconsistent with Allen's complaints of

pain to the orthopedist.  Further, Allen's examination revealed nearly full range of motion and

normal strength and sensation, and there was no record evidence that Allen followed up with a neurologist as instructed to do. Finally, Allen's testimony that nothing made the pain better was inconsistent with her prior reports to her physicians that Percocet helped.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient to support an adverse credibility determination and the ALJ must rely on substantial evidence. *Id.* "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Given the ALJ's duty to fully and fairly develop the record, combined with the fact that I am reversing and remanding for other reasons, I find that the ALJ should explore the reasons for Allen's gaps in treatment. *See Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). It is true "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course

of treatment" is a valid reason to question testimony, but the ALJ did not explore the reasons for

Allen's failure to seek treatment, or to follow her orthopedist's advice to see a neurologist.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (some internal citations omitted).  The

ALJ had no information as to the reasons for Allen's gaps in treatment.  *See Orn*, 495 F.3d at 638

(failure to obtain medical care due to lack of funds or insurance not a clear and convincing

reason).

With the exception of the efficacy of Percocet, the ALJ's remaining reasons largely fit in

the category of testimony unsupported by the medical record, and that reason alone is insufficient

to support a finding that the claimant lacks credibility.  *Rollins v. Massanari*, 261 F.3d 853, 857

(9th Cir. 2001) (although the ALJ cannot reject subjective pain testimony solely because it was

not fully corroborated by objective medical evidence, medical evidence is still a relevant factor in

determining the severity of the pain and its disabling effects).  Since I am reversing and

remanding, I find it most judicially efficient for the ALJ to reassess Allen's credibility.

IV.    Remedy

The court has discretion to credit evidence and immediately award benefits if the ALJ

failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be

resolved before a determination of disability can be made, and it is clear from the record that the

ALJ would be required to find the claimant disabled if the evidence is credited.  *Garrison v.

Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

As Allen herself recognizes, issues remain for the ALJ to resolve.  The ALJ should

reassess Dr. Gasparre's opinion, sort out the reaching/handling/fingering limitations and their

effect on Allen's ability to perform her past work or other work in the national economy, and

properly assess Allen's credibility.

## CONCLUSION

The decision of the Commissioner is reversed.  This action is remanded to the

Commissioner under sentence four of 42 U.S.C. § 405(g) for rehearing to further develop the

record as explained above.  Judgment will be entered.

IT IS SO ORDERED.

DATED this ____25th____ day of May, 2016.


      /s/ Garr M. King
      Garr M. King
      United States District Judge